IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERMANTOWN CAB COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA PARKING | : | |
| AUTHORITY, et al. | : | NO. 14-4686 |

## MEMORANDUM

**Padova, J.**                                                              **April 29, 2015**

Plaintiff Germantown Cab Company ("Germantown") brings this action against Defendants the Philadelphia Parking Authority (the "PPA") and two of its employees, Christine Kirlin and William Schmid. Germantown's Complaint alleges that Defendants violated its procedural due process rights under the federal and Pennsylvania constitutions when they placed Germantown's certificate of public convenience ("CPC") out of service on August 8, 2014 without a prior hearing. Defendants have moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, we grant Defendants' Motion.

## I.     BACKGROUND

The Complaint alleges the following facts. Germantown is a partial-rights taxicab company that holds a CPC issued by the Pennsylvania Public Utility Commission. (Compl. ¶ 3.) While a "[m]edallion taxicab" is "certified by the [PPA] to provide citywide taxicab service and [is] affixed with a medallion," a "[p]artial-rights taxicab" is "authorized by the [PPA] to provide common carrier call or demand transportation of persons for compensation on a non-citywide basis." 52 Pa. Code § 1011.2. A partial-rights taxicab may transport individuals "to cities of the first class in accordance with the service authorized under its certificate of public convenience." 53 Pa. Cons. Stat. Ann. §§ 5714(d)(1)(i); (Compl. ¶ 3). Unlike medallion cabs, which require

both medallions and CPCs to operate, partial-rights taxicab companies only need CPCs to operate.  Compare 52 Pa. Code § 1015.2(a), with 53 Pa. Cons. Stat. Ann. § 5714(a)(1).

A.    Annual Filing Requirement

The PPA regulations in place when Germantown's CPC was placed out of service provided that "[a]ll rights will expire annually" and "[e]xpired rights will be placed out of service by the [PPA]."  52 Pa. Code §§ 1011.3(a), (b)(1).[1]  The regulations further provided that "[r]ights issued by the [PPA] shall be renewed by completing and filing the required renewal form . . . with the Manager of Administration."  Id. § 1011.3(c)(1).  The regulations also provided that the PPA "will deny renewal of rights" when:  (1) "the owner of the rights subject to renewal fails to complete the renewal process;" (2) "[t]he renewal process reveals information about the renewing person or those with a controlling interest in the renewing person that would have resulted in a denial of an initial application for the rights;" or (3) the renewing person fails to submit annual assessment or renewal fees.  Id. §§ 1011.3(d)(1)-(3).

Considering these regulations and a Proposed Rulemaking Order submitted by Germantown clarifying how the PPA actually applied the regulations, it is clear that when Germantown's CPC was placed out of service, CPCs did not expire, but the right to use a CPC would expire upon a taxicab company's failure to fulfill the PPA's annual filing requirement, and the PPA would place the CPC out of service.[2]  (See Pl.'s Ex. A, "Regulatory Analysis Form"

_____

[1] Unless otherwise noted, all subsequent citations to PPA regulations are to the version of those regulations that was in effect at the time the facts alleged in the Complaint occurred.

[2] More than four months before Germantown's CPC was placed out of service, the PPA adopted a Proposed Rulemaking Order clarifying that "[t]he [PPA's] existing regulations require all regulated parties to make an annual information filing (renewal) with the [PPA] to assure that the individual or business entity is in continuing compliance with the act and the [PPA's] orders and regulations."  (Pl.'s Ex. B, "Proposed Rulemaking Order at 1.)  The Order states that "[t]his annual update or 'renewal' process was an issue during the promulgation of the regulations

¶¶ 7, 17; Pl.'s Ex. B, "Proposed Rulemaking Order at 2); <u>see also</u> 52 Pa. Code §§ 1011.3(b)(1), (c)(1), (d)(1).

To fulfill the annual filing requirement, Germantown was required to submit a form to the PPA's Taxicab and Limousine Division ("TLD") "containing basic information about [its] operations, including its name, address, contact information, vehicle and driver information, and shareholder, officer and key employee information."  (Compl. ¶ 10.)  Germantown was also required to "include criminal record checks for Germantown's officers, shareholders and key employees."  (<u>Id.</u> ¶ 35.)  Although the PPA regulations in effect when Germantown's CPC was placed out of service stated that "[f]or partial-rights taxicab certificates, Form PR-1 'Partial Rights Renewal' shall be filed on or before March 15 of each year, 52 Pa. Code § 1011.3(g)(2)(ii), it appears, from the text of citations issued by the PPA, that the PPA required Form PR-1 to be filed on or before March 31.  (<u>See</u> Compl., Ex. F.)

B.    <u>Fiscal Year 2014 Annual Report</u>

On March 24, 2014, one week before the March 31, 2014 deadline for filing the Fiscal Year ("FY") Form PR-1, Germantown filed its FY 2014 Form PR-1 under protest, pursuant to a March 13, 2014 settlement agreement with the PPA.  (<u>Id.</u> ¶ 14.)  The FY 2014 Form PR-1 was

---

because the regulations use [the] term expired as to certificates of public convenience," and the PPA proposed amending its regulations "to eliminate the use of the confusing term 'expired' in connection with certificates of public convenience" because "[u]nder the regulations, certificates of public convenience do not expire."  (<u>Id.</u>)  The Order also clarified that "[t]he failure to make [the annual] regulatory filing [would] continue to result in an [out-of-service] designation."  (<u>Id.</u> at 2.)

The Proposed Rulemaking Order and Regulatory Analysis Form are public records that may be considered on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Miller v. Cadmus Commc'ns</u>, Civ. A. No. 09-2869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (stating that "evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies)" (citing <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384-85 nn.1-2 (3d Cir. 1995))).

"substantially identical in form, substance and content" to the FY 2015 Form PR-1 "and contain[ed] all of the information Germantown was required to supply . . . in its [FY] 2015 annual report." (Id. ¶ 16.)

On March 27, 2014, Defendant Christine Kirlin[3] "reminded Germantown of its obligation to file its Fiscal Year 201[5] annual report."[4] (Id. ¶ 18.) On March 31, 2014, Germantown, through counsel, sent Kirlin a letter stating that it had recently filed its FY 2014 Form PR-1 under protest, and that "[s]ince the form for [FY 2015] appear[ed] to be identical to the form for [FY 2014] and none of the information need[ed] to be updated, [it did] not see the necessity of refiling the same form [it] previously filed." (Id., Ex. E; see also id. ¶ 19.) Germantown asked Kirlin to consider its FY 2014 filing as a fulfillment of the FY 2015 filing requirements and instructed her to contact Germantown's counsel if she had any questions or concerns. (Id., Ex. E; see also id. ¶ 20.) Kirlin did not respond to the letter, and never "notified Germantown that she did not consider [its] reporting obligations for [FY] 2015 to be fulfilled." (Id. ¶ 21.)

C.    Citation for Failure to Satisfy Annual Filing Requirements

On May 8, 2014, Defendant William Schmid "issued an electronic notice to Germantown confirming the issuance of a PPA citation alleging that Germantown had failed to meet its annual filing requirements."[5] (Id. ¶ 22; see also id., Ex. F at 2.) The citation, which is dated May 6, 2014, lists "Fail[ure] to fulfill anual [sic] filing requirements" as the "Nature of Offense" and

---

[3] Kirlin "is the TLD's Clerk and the Manager of its Administration Department" and "is directly responsible for the receipt of the report that is the subject of this action and for notifying motor carriers of their obligations to file such reports and the consequences of their failure to do so." (Compl. ¶ 5.)

[4] The Complaint alleges that Kirlin reminded Germantown that it needed to file its FY 2014 Form PR-1, but this allegation appears to refer to the FY 2015 Form PR-1.

[5] Schmid is the TLD's Deputy Director and Enforcement Manager. (Id. ¶ 4.)

references 52 Pa. Code § 1011.3.  (Id., Ex. F at 1.)  The citation states that Germantown "did not

file the renewal aplication [sic] that was due by March 31, 2014."  (Id.)  Although Germantown

pled not liable to the citation and requested a hearing (id., Ex. G; see also id. ¶ 24), its appeal had

not yet been adjudicated at the time its CPC was placed out of service (id. ¶ 25).

D.      Out-of-Service Designation

On August 8, 2014, Schmid served Germantown with a letter notifying it that the TLD

had placed its CPC out of service, effective at 12:00 p.m. on that date, and that the TLD intended

to pursue revocation of Germantown's CPC for failing to fully comply with its annual filing

requirements for FY 2014 and FY 2015.  (Id. ¶ 7; see also id., Ex. B at 1.)  The letter instructed

Germantown to "contact the Clerk for further instructions, including the date and time of the

emergency hearing regarding [the out-of-service] designation" and to "take immediate steps to

bring [the] company into compliance."  (Id., Ex. B at 1.)  On August 7, 2014, Schmid also issued

a citation accusing Germantown of failing to file its "FY 2015 PR-1."  (Id., Ex. B at 2.)  "Shortly

after being served with the letter, Germantown directed its drivers to cease operations" and

stopped "providing taxicab service in its authorized territory."  (Id. ¶ 13.)

Schmid's August 8, 2014 letter was Germantown's first notice that the PPA would be

placing its certificate of public convenience out of service because of its failure to file the FY

2015 report form.  (Id. ¶ 11.)  Moreover, Kirlin, whose job responsibilities included notifying

motor carriers of the consequences of failing to file the required forms, never "advised

Germantown that its [CPC] was subject to an out-of-service designation as a result of the alleged

defect" or "gave Germantown an opportunity to cure the alleged defect, either before or after she

initiated the process to issue the out-of-service designation."  (Id. ¶¶ 5, 21.)

5

E.      Request for Hearing and Attempts to Fulfill the FY 2015 Filing Requirements

After being served with the out-of-service designation on Friday, August 8, 2014, Germantown requested an immediate hearing before the TLD's Hearing Officer, but the Officer was not available until Monday, August 11, 2014.  (Id. ¶¶ 30, 33.)  Germantown thereafter requested a hearing before an emergency hearing officer, but "the TLD does not have an emergency hearing officer or procedure[s] for emergency hearings when the . . . Hearing Officer is unavailable."  (Id. ¶ 34.)  Germantown also attempted to file its FY 2015 annual report, but "Kirlin rejected the filing because it did not include [updated] criminal record checks for Germantown's officers, shareholders and key employees."  (Id. ¶ 35.)  "Kirlin also rejected the filing because Germantown used the [FY 2014] report form" for its FY 2015 filing and "simply changed the filing year to 2015."  (Id. ¶ 36.)

Germantown then filed an Application for Relief in the Commonwealth Court of Pennsylvania, "requesting an emergency hearing and an injunction to enjoin enforcement of the out-of-service designation pending [the] resolution of outstanding violations."  (Id. ¶ 41.)  The Commonwealth Court did not address Germantown's request for an immediate emergency hearing (id. ¶¶ 42-43), so Germantown "again submitted, through counsel, and under protest, a corrected [FY] 2015 annual report on the correct form, with an affidavit of no criminal record for Germantown's shareholders, officers and key employees and a promise to obtain criminal records for them as soon as practical" (id. ¶ 44).

At the time Germantown filed its Complaint, the TLD had not yet indicated whether it would accept Germantown's incomplete FY 2015 PR-1.  (Id. ¶ 45.)  However, the parties agree that Germantown received a hearing on August 11, 2014 -- three days after its CPC was placed out of service -- and thereafter regained its ability to operate pursuant to its CPC.  (3/3/15 Hr'g

Tr. at 26-27, 38-39, 43.)   On August 13, 2014, the TLD Hearing Officer issued an order documenting the PPA's agreement to stay the out-of-service designation in exchange for Germantown:  (1) submitting the required criminal record checks; (2) paying its "outstanding TLD penalties in the amount of $8,825.00;" (3) paying its outstanding parking violations totaling $4,671.80; and (4) pleading liable to the May 6, 2014 and August 7, 2014 citations for failure to fulfill the annual filing requirements and paying a $100.00 fine for each one.  (Def.'s Mem., Ex. A at 3-4.)[6]  The Hearing Officer terminated the out-of-service designation on September 16, 2014, after Germantown came into compliance with the TLD regulations it had allegedly violated.  (Id., Ex. B at 2.)

Count I of the Complaint asserts a claim pursuant to 42 U.S.C. § 1983 for violation of Germantown's Fourteenth Amendment procedural due process rights and also asserts a claim for violation of Article I, Section 1 of the Pennsylvania Constitution.  Specifically, Count I asserts that Defendants deprived Germantown of its ability to provide taxicab service in Philadelphia, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution, by placing Germantown's CPC out of service without a prior hearing.  (Compl. ¶ 47.)  Count II of the Complaint consists of Germantown's demand for damages, attorneys' fees, and injunctive relief.[7]  (Id. ¶ 58.)

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as

---

[6] The orders are public records and may therefore be considered on a motion to dismiss pursuant to Rule 12(b)(6).  See Miller, 2010 WL 762312, at *2.

[7] While Count II does not set forth a separate claim for relief, we decline to dismiss it on that basis at this time.

undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

### III.    DISCUSSION

Count I of the Complaint asserts that Defendants deprived Germantown of its ability to provide taxicab service in Philadelphia, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution, when Defendants placed Germantown's CPC out of service without a prior hearing. (Compl. ¶ 47.)  Defendants argue that Germantown's procedural due process claims should be dismissed because the Complaint fails to plausibly allege:  (1) the deprivation of a constitutionally protected property interest, or (2) that Germantown's post-deprivation hearing three days after the out-of-service designation was inadequate to satisfy procedural due process requirements.[8]

"'To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'"  Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quoting Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005)).  Germantown's Complaint alleges that Defendants violated its due process rights under the Fourteenth Amendment, which states in pertinent part that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Under the Fourteenth Amendment, "a state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process."   Sample v. Diecks, 885 F.2d 1099, 1114 (3d Cir. 1989) (citations omitted).  In order to state a facially plausible § 1983 claim for the deprivation of

---

[8] Defendants also argue that we should dismiss Germantown's due process claims because the Complaint does not plausibly allege that a final policymaker took any objectionable action.  We do not address this argument because we grant the Motion on other grounds.

Fourteenth Amendment procedural due process rights, a complaint must allege that: "(1) [the plaintiff] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [the plaintiff] did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

Article I, Section 1 of the Pennsylvania Constitution provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. The Pennsylvania Supreme Court has noted that this provision of the Pennsylvania Constitution is a guarantee of due process of law. Lyness v. Pennsylvania State Bd. of Med., 605 A.2d 1204, 1207 (Pa. 1992). The Pennsylvania Supreme Court has further determined that "the requirements of Article I, Section 1 of the Pennsylvania Constitution are not distinguishable from those of the 14th Amendment." Pennsylvania Game Comm'n v. Marich, 666 A.2d 253, 255 n.6 (Pa. 1995). Consequently, we "apply the same analysis to both claims." Id.

A.   Property Interest

Germantown argues that it has a constitutionally protected property interest flowing from its CPC. "To have a property interest, a person 'must have more than a unilateral expectation to it' [and] 'must, instead, have a legitimate claim of entitlement to it.'" Yu v. United States Dep't of Veterans Affairs, 528 F. App'x 181, 185-86 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007)). "'[T]he types of interests protected as property are varied and, as often as not, intangible, relating to the whole domain of social and economic fact.'" Stana v. Sch. Dist. of the City of Pittsburgh, 775 F.2d 122, 125-26 (3d Cir. 1985) (alteration in

original) (quoting <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 430 (1982); and citing <u>Perri v. Aytch</u>, 724 F.2d 362, 364 (3d Cir. 1983)).  While property interests are often "'created expressly by state statute or regulation,'" <u>Hayes v. Pittsburgh Bd. of Pub. Educ.</u>, 279 F. App'x 108, 110 (3d Cir. 2008) (quoting <u>Carter v. City of Philadelphia</u>, 989 F.2d 117, 120 (3d Cir. 1993)), they may "also arise from written or unwritten state or local government policies." <u>Stana</u>, 775 F.2d at 126; <u>see also</u> <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.  Rather[,] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."). "'Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" <u>Berlanti v. Bodman</u>, 780 F.2d 296, 299 (3d Cir. 1985) (quoting <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 9 (1978)).

Because the essential function of a CPC is to grant the holder the right to engage in taxicab service in Philadelphia, the ultimate property right at issue is Germantown's right to engage in its business.  The right to pursue a livelihood or profession is a property right under Pennsylvania law that triggers "the protective mechanism of procedural due process." <u>Lyness</u>, 605 A.2d at 1207.  Under Pennsylvania law, "[a] license, once obtained by compliance with law, becomes a valued privilege or right in the nature of property, which may not be suspended or revoked without due process.'" <u>Marin v. McClincy</u>, 15 F. Supp. 3d 602, 612 (W.D. Pa. 2014) (alteration in original) (quoting <u>Balfour Beatty Const. Inc. v. Dep't of Transp.</u>, 783 A.2d 901, 908 (Pa. Commw. Ct. 2001)); <u>see also</u> 53 Pa. Cons. Stat. Ann. § 5713(b) (stating that a CPC "is a licensing right").  This is because the license permits the license holder to operate its business.

11

See 1412 Spruce, Inc. v. Pennsylvania Liquor Control Bd., 474 A.2d 280, 282 (Pa. 1984) (stating

that, because a valid "license as it is applied to [a] business . . . produces a value" and "[t]he

value is a projected income, a livelihood for the license holder," "it is fundamental that the

opportunity for business income, if taken away, must be compensated for" (emphasis in

original)).  In Lockhart v. Matthew, 83 F. App'x 498, 500-01 (3d Cir. 2003), the United States

Court of Appeals for the Third Circuit held that the natural expiration of a license obviates any

claim that it is a constitutionally protected property interest.  See id. (affirming district court's

conclusion that there was no property interest in EMT license after it expired).  Furthermore,

"[t]he Supreme Court has refused to recognize a property interest in a benefit which did not

automatically renew and was not guaranteed under state law or administrative policy."  Marin,

15 F. Supp. 3d at 612 (citing Roth, 408 U.S. at 578).  Defendants argue that the Complaint does

not plausibly allege the deprivation of a constitutionally protected property interest flowing from

Germantown's CPC because Germantown has no legal entitlement to the automatic renewal of

its CPC when it fails to comply with the PPA's mandatory annual filing requirements.

Germantown had no property rights in its CPC for FY 2015, which began on July 1,

2014, as a result of its failure to satisfy its FY 2015 filing requirements.[9]  See 52 Pa. Code §§

1011.3(a), (b)(1), (c)(1), (d)(1).  Indeed, Germantown's CPC "was not guaranteed under [any]

state law or administrative policy," see Marin, 15 F. Supp. 3d at 612 (citing Roth, 408 U.S. at

---

[9] We take judicial notice of the fact that the PPA's 2015 fiscal year began on July 1, 2014 and ends on June 30, 2015.  See "The Philadelphia Parking Authority Taxicab and Limousine Division Fee & Assessment Schedule for the 2015 Fiscal Year Beginning July 1, 2014," available at http://philapark.org/wp-content/uploads/2014/03/Assessment-Fee-Schedules-FY-2015.pdf; see also In re Merck & Co. Securities Litig., 432 F.3d 261, 264 n.3 (3d Cir. 2005) (stating that courts may take judicial notice of facts that "are 'not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned'" (alteration in original) (quoting Ieradi v. Mylan Labs., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000))).

578), because rights in CPCs expire annually; renewal is not automatic; and the PPA has the discretion to deny a renewal of rights.  <u>See</u> 52 Pa. Code §§ 1003.51(d), 1011.3(a), 1011.3(d)(1). Because Germantown's out-of-service designation "[took] effect only [after] the expiration of the annual license term," there could not have been any unconstitutional deprivation of a property interest in Germantown's business flowing from that CPC "because the privileges granted by the [CPC had] then lapsed."  <u>See Replogle v. Pennsylvania Liquor Control Bd.</u>, 506 A.2d 499, 500 (Pa. Commw. Ct. 1986).

In light of the foregoing, we conclude that the Complaint fails to plausibly allege, and could not allege, that Defendants deprived Germantown of a property interest flowing from its CPC, in violation of the Fourteenth Amendment or Article I, Section 1 of the Pennsylvania Constitution.  <u>See Replogle</u>, 506 A.2d at 501 (stating that there is no infringement of Article I, Section 1 of the Pennsylvania Constitution when the plaintiff's liquor license was not renewed because the license expired annually, even though the license had been renewed in the past).

## B.   <u>Due Process</u>

Even if the Complaint did plausibly allege that Germantown was deprived of a property interest under the Fourteenth Amendment or Article I, Section 1 of the Pennsylvania Constitution, we also conclude that it does not plausibly allege that a hearing was required before Germantown's CPC was placed out of service.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 549 (3d Cir. 2001) (quotation omitted).  "In a typical situation, the hearing should come before the Government deprives a person of his property."  <u>Elsmere Park Club, L.P. v. Town of Elsmere</u>, 542 F.3d 412, 417 (3d Cir. 2008).  "This makes practical sense, '[f]or when a person has an opportunity to speak up in his own defense, and when the State must

listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented.'" Id. (alteration in original) (quoting Fuentes v. Shevin, 407 U.S. 67, 81 (1972)).

However, "'due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Biliski, 574 F.3d at 220 (quoting Gilbert v. Homar, 520 U.S. 924, 930 (1997)).  Instead, "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'"  Id. (quoting Gilbert, 520 U.S. at 930).  Indeed, although "[t]he Supreme Court 'consistently has held that some kind of hearing is required at some time before a person is finally deprived of his property interests,'" Graham v. City of Philadelphia, 402 F.3d 139, 145 (3d Cir. 2005) (quoting Craft, 436 U.S. at 16), it "has rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property.'"  Biliski, 574 F.3d at 220 (alteration in original) (quoting Gilbert, 520 U.S. at 930); see also Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011) ("Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" (alterations in original) (quoting Brody v. Vill. of Port Chester, 434 F.3d 121, 134 (2d Cir. 2005))).

To determine "when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due," Nnebe, 644 F.3d at 158 (citation omitted), we apply the three-prong balancing test announced by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  See R. v. Dep't of Pub. Welfare, 636 A.2d 142, 153 (Pa. 1994) (adopting "the Matthews methodology to assess due process claims brought under Section 1 of Article I of the Pennsylvania Constitution").  This test requires consideration of three factors:  (1) "'the private

14

interest that will be affected by the official action,'" (2) "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail,'" and (3) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'"  Biliski, 574 F.3d at 220 (quoting Mathews, 424 U.S. at 335); see also Nnebe, 644 F.3d at 158-59 (applying the Mathews balancing test to procedural due process claim involving suspension of taxicab licenses).  Defendants argue that Germantown was not entitled to a hearing before its CPC was placed out of service because, balancing Germantown's interest, the PPA's interest, and the risk of an erroneous deprivation, Germantown's hearing three days after the out-of-service designation was sufficient to satisfy the requirements of procedural due process under the Fourteenth Amendment and Article I, Section 1 of the Pennsylvania Constitution.

1.   Private Interest

The private interest in this case is Germantown's interest in operating its business in the City of Philadelphia.  The Complaint alleges that Germantown is "the largest taxicab company in Philadelphia," is "highly successful," and "employs a large number of drivers, mechanics, dispatchers and managers."  (Compl. ¶¶ 1, 3.)  The Complaint further alleges that Germantown "provides nearly 2000 trips per day . . . in Philadelphia."  (Id. ¶ 54.)  Construing these allegations in the light most favorable to Germantown, the Complaint plausibly alleges that Germantown generates a great deal of revenue from its business in Philadelphia and has a significant number of employees who financially depend on Germantown's ability to operate.

"The Supreme Court has often 'recognized the severity of depriving someone of the means of his livelihood.'"  Biliski, 574 F.3d at 221 (citations omitted).  However, it has "also

emphasized that in determining what process is due, account must be taken of 'the <u>length</u>' and '<u>finality</u> of the deprivation.'" <u>Gilbert</u>, 520 U.S. at 932 (citation omitted).  Indeed, "[t]he duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved." <u>Mackey v. Montrym</u>, 443 U.S. 1, 12 (1979) (citing <u>Fusari v. Steinberg</u>, 419 U.S. 379, 389 (1975)).  Furthermore, a temporary suspension, even one resulting in the loss of income, is considered to be "'relatively insubstantial' as compared to the 'severity of depriving someone of the means of his livelihood.'" <u>Espinosa v. Cnty. of Union</u>, 212 F. App'x 146, 155 (3d Cir. 2007) (quoting <u>Gilbert</u>, 520 U.S. at 932).

Defendants argue that Germantown has a diminished private interest in this case because the out-of-service designation that lasted for three days "did not impair Germantown's ability to conduct business outside of Philadelphia and, at most, reduced its profits."  (Defs.' Mem. at 22.) We agree that Germantown's private interest is diminished because the short out-of-service designation did not affect its ability to operate as a taxicab company outside of Philadelphia and, thus, did not extinguish its ability to generate revenue during those three days.  <u>See</u> <u>Harrison v. United States Postal Serv.</u>, 840 F.2d 1149, 1154 (4th Cir. 1988) (concluding that private interest of plaintiff, who had been decertified as a private driver for the postal service, while important, was not sufficient to require pre-deprivation hearing because he "was not deprived <u>altogether</u> of his livelihood as a truck driver, but simply prevented from driving a truck which carries the United States mail" (emphasis in original) (citations omitted)); <u>Ritter v. Cohen</u>, 797 F.2d 119, 123 (3d Cir. 1986) (stating that physician whose Medicaid provider agreement was terminated had diminished private interest, even though "ninety-nine percent of his medical practice consist[ed] of patients eligible for Medicaid reimbursement," when "he [was] not totally

dependent on the program, for he [could] seek private patients"). Indeed, while the Complaint alleges that Germantown operates in Philadelphia and Montgomery County (Compl. ¶ 3, Ex. A, Corrected Final Order at 1-2), the PPA only has jurisdiction over taxicab company operations in Philadelphia, and the Complaint does not allege that the PPA's decision to place Germantown's CPC out of service impacted Germantown's ability to operate in Montgomery County. See 52 Pa. Code § 1011.1 (stating that the PPA's regulations and procedures govern "taxicab service in Philadelphia"). Rather, the Complaint specifically alleges that Germantown was unable to provide taxicab service in Philadelphia. (See, e.g., Compl. ¶ 1 (alleging that Defendants' actions deprived Germantown of its "right to provide taxicab service in Philadelphia").)

Germantown's interest is further diminished because it could obtain a remedy within a few days. See Scott v. Williams, 924 F.2d 56, 59 (4th Cir. 1991) (concluding that duration of wrongful driver's license suspension in that case would be very short because "a licensee may obtain a remedy immediately. That is, upon receiving a notice of suspension, to obtain reinstatement a licensee need only submit a statement from the doctor of his choice, pay the $30 fee, and retake the driver's examination"). Moreover, Germantown was not finally deprived of any property interest. See Gilbert, 520 U.S. at 932 (indicating that employee who faces temporary suspension without pay, and receives prompt post-deprivation hearing, has lesser private interest than employee who faces termination). Indeed, PPA regulations provided for a hearing within three days of an out-of-service designation. 52 Pa. Code § 1003.32(e). The parties agree that Germantown received a hearing three days after the designation and thereafter regained its ability to operate pursuant to its CPC. (3/3/15 Hr'g Tr. at 26-27, 38-39, 43.) Accordingly, the out-of-service designation was only an initial deprivation, not a final deprivation, because Germantown only temporarily lost its ability to operate pursuant to its CPC

and its CPC was not revoked.  See 52 Pa. Code § 1003.31 (stating that an out-of-service designation constitutes an "[i]mmediate and temporary prohibition from the exercise of rights granted by the [PPA]").

Because Germantown retained its ability to operate outside of Philadelphia during the out-of-service designation and only lost its ability to operate in Philadelphia for three days, we conclude that the record before us shows that Germantown had a diminished private interest.  We therefore further conclude that the first Mathews factor weighs somewhat in favor of Germantown.

2.    Government Interest

Defendants argue that the PPA has "an unquestionably strong public interest in regulating the Philadelphia taxicab industry."  (Defs.' Supp. Br. at 17.)  Defendants further argue that the PPA has "a compelling interest in ensuring that operators do not have criminal records."  (Id. (emphasis in original).)  Defendants also argue that they were compelled to issue the out-of-service designation without a prior hearing because "Germantown ignored a letter and a citation, even after the [PPA] had previously placed its CPC out of service for" failing to fulfill its FY 2014 filing requirements, and Germantown only fulfilled these requirements "when it was coerced to do so by" that previous out-of-service designation.  (Id. at 17-18.)

The Complaint alleges that the PPA denied renewal of Germantown's rights for FY 2015 -- i.e., placed Germantown's CPC out of service -- because Germantown failed to file its FY 2015 Form PR-1.  (Compl. ¶ 8.)  The Complaint further alleges that:  (1) Germantown did not submit either the FY 2015 form or the required criminal background information for its officers, shareholders, and key employees (id. ¶¶ 19, 35); and (2) Germantown's late submission of its FY 2014 annual report form resulted in a previous out-of-service designation (id. ¶¶ 15, 17, Ex. C).

18

The PPA determines the amount of taxicab operators' yearly assessments based on the number of taxicabs they report they will have in service in their annual reports, and the PPA's annual regulatory budget depends on these assessments.  See 53 Pa. Cons. Stat. Ann. §§ 5707(a), (c)(1).  Accordingly, the PPA's ability to operate depends, in part, on Germantown's timely compliance with the PPA's annual filing requirements.  Moreover, it is obviously critical for public safety reasons that the PPA know the "basic information about a motor carrier's operations, including its name, address, contact information, vehicle and driver information, and shareholder, officer and key employee information" and whether the operator's officers, shareholders, or key employees have criminal records.  (See Compl. ¶¶ 10, 35.)

We therefore conclude that Defendants had a substantial government interest in placing Germantown's CPC out of service before holding a hearing.  This interest is somewhat diminished, however, because Defendants have not established what fiscal or administrative burdens would have resulted from holding a pre-deprivation hearing.  The second Mathews factor therefore weighs in favor of Defendants.

### 3.   Risk of Erroneous Deprivation

Germantown maintains that the requirements of due process entitled it to a pre-deprivation hearing.  The Complaint alleges that Germantown requested, but did not receive, a hearing before its CPC was placed out of service.  Specifically, the Complaint alleges that Germantown received an electronic citation, notifying it that the PPA believed it had not filed its FY 2015 Form PR-1, three months before its CPC was placed out of service.  (Compl. ¶ 22, Ex. F at 1-2.)  Germantown appealed that citation, but its appeal hearing had not yet occurred at the time Defendants placed its CPC out of service.  (See id. ¶ 25, Ex. G.)  Clearly, Germantown did not receive a pre-deprivation hearing.

"[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protect[able] 'property' . . . interest be so comprehensive as to preclude any possibility of error." Mackey, 443 U.S. at 13.  Indeed, "'[i]n general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action,'" Biliski, 574 F.3d at 221 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)), and the Supreme Court "has rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property.'" Id. at 220 (alteration in original) (quoting Gilbert, 520 U.S. at 930); see also Nnebe, 644 F.3d at 158 ("Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" (alterations in original) (quoting Brody, 434 F.3d at 134)).  Accordingly, "pre-deprivation notice and opportunity to be heard is not constitutionally required in all cases, if post-deprivation process is adequate," i.e., meaningful, in light of a balancing of the Mathews factors.  DeMutis v. Borough of Phoenixville, Civ. A. No. 90-3519, 1990 WL 96100, at *2 (E.D. Pa. July 5, 1990); see also Abdulai, 239 F.3d at 549 ("'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" (quoting Matthews, 424 U.S. at 333)).  However, "when an individual is not provided with any form of pre-deprivation process, . . . the risk of an erroneous deprivation of his constitutionally protected interest—i.e., the [third] factor of the Mathews balancing—is heightened considerably." Dee v. Borough of Dunmore, 549 F.3d 225, 232 (3d Cir. 2008).

Defendants argue that the risk of an erroneous deprivation was low in this case because PPA regulations provided for a meaningful and prompt post-deprivation hearing within three days of an out-of-service designation, 52 Pa. Code § 1003.32(e), and Germantown received such

20

a hearing three days after its CPC was placed out of service (3/3/15 Hr'g Tr. at 26-27, 38-39, 43). PPA regulations require the PPA's Enforcement Department to "file a formal complaint . . . against the out of service respondent for the violations forming the basis of the out of service designation within 2 days of the designation," and provide that "[t]he [out-of-service] designation will be terminated and the Clerk will notify the respondent . . . of the cancellation of the scheduled hearing in the event a complaint is not filed."  52 Pa. Code § 1003.32(f)(1)-(2). The regulations also provide a taxicab operator with the opportunity to file an answer to the Enforcement Department's complaint.  Id. § 1003.32(f)(3).

The Pennsylvania Code further provides that, at a post-deprivation hearing, "[t]he averments of the Enforcement Department's complaint . . . will be deemed denied by the respondent for purposes of the [out-of-service] hearing," id. § 1003.32(g)(1), and "the Enforcement Department will bear the burden of proof by a preponderance of the evidence that the [out-of-service] designation remains appropriate."  Id. § 1003.32(g)(2).  A taxicab company whose CPC had been placed out of service may "submit evidence, cross-examine Enforcement Department witnesses and otherwise participate in the hearing."  Id.  Furthermore, "[a]n order following an [out-of-service] hearing may rescind, modify or continue the out of service designation," and "[w]hen an order . . . modifies or continues an [out-of-service] designation, the order will include a prompt date for a hearing on the Enforcement Department's formal complaint."  Id. § 1003.32(h).  Additionally, "[t]he decision of the presiding officer [constitutes] a recommended decision and will be reviewed by the Authority."  Id. § 1003.32(i).  We conclude that these post-deprivation procedures provided Germantown with an opportunity for a meaningful and prompt post-deprivation hearing.  Notably, the PPA was required to hold a hearing within three days of the out-of-service designation and to prove by a preponderance of

the evidence that the out-of-service designation was warranted; Germantown could present evidence and cross-examine any PPA witnesses; and any decision adverse to Germantown would be automatically reviewed by the Authority.  See id. §§ 1003.32(e), (g)(2), (h).

Furthermore, the Supreme Court has noted, in analyzing this Matthews factor, that even a thirty-day "delay in presenting evidence is unlikely to spawn significant factual errors" where the issue is straightforward.  City of Los Angeles v. David, 538 U.S. 715, 718 (2003).  Moreover, "the risk of erroneous deprivation is mitigated by the availability of a prompt post-deprivation hearing."  See Nnebe, 644 F.3d at 159 (determining that the "'risk of an erroneous deprivation'" was diminished "by the availability of a prompt post-deprivation hearing" because the plaintiff risked only the income it would have earned between the date of the deprivation and the date of the prompt post-deprivation hearing).  We conclude, accordingly, that the risk of erroneous deprivation was mitigated by Germantown's prompt post-deprivation hearing, and that this factor weighs in favor of Defendants.

Accordingly, the record before us shows that the first Matthews factor weighs in favor of Germantown, and that the second and third Matthews factors weigh in favor of Defendants. Balancing these factors, we conclude that the Complaint does not plausibly allege, and could not allege, that due process required Defendants to provide Germantown with a pre-deprivation hearing pursuant to the Fourteenth Amendment or Article I, Section 1 of the Pennsylvania Constitution.   See id. (concluding that no pre-deprivation hearing was required when the deprivation was temporary; there was no pre-deprivation process; there was a "strong government interest;" and "the risk of erroneous deprivation [was] mitigated by the availability of a prompt post-deprivation hearing"); see also In re SimmsParris, 448 F. App'x 268, 271 (3d Cir. 2011) (stating that "interim suspension of a professional license pending final disposition

does not require a pre-suspension hearing" (citing <u>Barry v. Barchi</u>, 443 U.S. 55, 65-66 (1979));

<u>Biliski</u>, 574 F.3d at 220 (stating that Supreme Court "has rejected the proposition that [due process] <u>always</u> requires the State to provide a hearing prior to the initial deprivation of property'" (alteration in original) (quoting <u>Gilbert</u>, 520 U.S. at 930)).  Because the Complaint fails to plausibly allege, and could not allege, either that Germantown had a constitutionally protected property interest flowing from its CPC or that a pre-deprivation hearing was required, we further conclude that it fails to plausibly allege, and could not allege, a violation of Germantown's procedural due process rights pursuant to the Fourteenth Amendment or Article I, Section 1 of the Pennsylvania Constitution.  We therefore grant Defendants' Motion to Dismiss as to Germantown's procedural due process claims in Count I.

C.      Leave to Amend

We ordinarily grant civil rights plaintiffs leave to amend when dismissing a case pursuant to Rule 12(b)(6).  <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); <u>see also</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) (noting that, in a civil rights case, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002))).  We previously concluded, based on the allegations in the Complaint, the exhibits attached to the Complaint, and the relevant regulations, that Germantown had no constitutionally protected property interest flowing from its CPC at the time its CPC was placed out of service.  Given that conclusion, we further conclude that it would be futile to grant Germantown leave to amend its Complaint to

allege that Germantown had such an interest.  Similarly, given our conclusion that no pre-deprivation hearing was required because the post-deprivation hearing available to Germantown satisfied due process, we further conclude that it would be futile to grant Germantown leave to amend its Complaint to allege the contrary.

## IV.    CONCLUSION

For the foregoing reasons, we grant Defendants' Motion to Dismiss with prejudice.  An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova_____
John R. Padova, J.