IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERMANTOWN CAB COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA PARKING | : | |
| AUTHORITY, et al. | : | NO. 14-4686 |

### MEMORANDUM

**Padova, J.**                                                    **August 12, 2015**

Plaintiff Germantown Cab Company ("Germantown") brings this action against Defendants the Philadelphia Parking Authority (the "PPA") and two of its employees, William Schmid and Christine Kirlin, in their official capacities.  Germantown's Amended Complaint asserts just two claims -- a First Amendment retaliation claim and a conspiracy claim -- against Defendants pursuant to 42 U.S.C. § 1983.  Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following reasons, we grant Defendants' Motion, but also afford Germantown leave to file a Second Amended Complaint.

## I.      BACKGROUND

The Amended Complaint alleges that Germantown is the largest of six partial-rights taxicab companies operating in Philadelphia and holds a certificate of public convenience ("CPC") that was issued by the Pennsylvania Public Utility Commission (the "PUC") on July 25, 1996.  (Am. Compl. ¶¶ 3, 12, 22.)  Germantown's "operating rights have never been modified, amended, or revoked by order of the PUC."  (Id. ¶ 12.)

A.      Regulation of Taxicab Service

Under Pennsylvania law, no person may operate a taxicab in Philadelphia unless the PPA authorizes such operation by the issuance of a CPC, and the PPA is statutorily authorized to

issue, suspend, cancel, or revoke a CPC.  53 Pa. Cons. Stat. Ann. §§ 5714, 5711(a); 52 Pa. Code § 1015.2.  Two types of taxicabs are authorized to operate in Philadelphia.  A "[m]edallion taxicab" is "certified by the [PPA] to provide citywide taxicab service and [is] affixed with a medallion."  52 Pa. Code § 1011.2.  A "[p]artial-rights taxicab" is "authorized by the [PPA] to provide common carrier call or demand transportation of persons for compensation on a non-citywide basis."  Id.  Unlike medallion cabs, which require both medallions and CPCs to operate, partial-rights taxicab companies only need CPCs to operate.  Compare id. § 1015.2(a), with 53 Pa. Cons. Stat. Ann. § 5714(a)(1).  Germantown's CPC authorizes it to transport people in portions of Philadelphia and Montgomery County.  (Am. Compl. ¶ 3.)

The Amended Complaint explains that the PUC regulated all taxicab service in Pennsylvania until March 12, 2005, when the PPA took over the PUC's responsibilities with respect to taxicab service in Philadelphia.  (Id. ¶ 7.)  Accordingly, while the PPA currently "has exclusive regulatory oversight responsibility over 'medallion' taxicabs in Philadelphia," the PUC "has exclusive regulatory oversight responsibility over [partial-rights taxicabs] that have rights outside of Philadelphia."  (Id. ¶¶ 8-9.)  "The PUC and the PPA entered into a jurisdictional agreement to resolve conflicts, which provides that the PPA regulates all service that begins or ends in Philadelphia."  (Id. ¶ 11.)  Some partial-rights taxicab companies, including Germantown, operate in a territory that is both inside and outside of Philadelphia.  (Id. ¶ 10.)  Indeed, Germantown "can pick up and drop off passengers in [its] territory, which may involve crossing the Philadelphia border," and it can also "pick up passengers in [its] territory and drop them off anywhere in Pennsylvania, including the parts of Philadelphia that are outside [its] territory."  (Id.)  The PUC and the PPA therefore share responsibility for regulating Germantown's taxicabs.  (Id.)

The Amended Complaint asserts that the differences between medallion taxicabs and partial-rights taxicabs are important to Germantown's claims because, "[h]istorically, the PUC regulated medallion taxicab[s] differently than [partial-rights] taxicabs." (Id. ¶ 13.) Specifically, "[m]edallion taxicabs had more stringent and costly regulatory standards because they provide service to the hospitality and travel industry in Philadelphia, while [partial-rights] taxicabs service residential neighborhoods and small businesses." (Id.) However, after the PPA began regulating the Philadelphia taxicab industry in 2005, the PPA "insisted on treating medallion and [partial-rights] cab companies alike, despite their clear differences."[1] (Id. ¶ 14.) Specifically, "[t]he PPA attempted to enforce medallion standards on [partial-rights] taxicabs by threatening [partial-rights taxicab companies], including [Germantown], with impoundment and revocation if they did not comply with" these standards. (Id.) "The imposition of these standards imposed onerous and costly requirements on [Germantown] and caused it great financial difficulty." (Id. ¶ 16.)

The Amended Complaint asserts that Germantown has actively sought to convince the PPA to stop regulating it according to the standards it imposes on medallion taxicabs. To this end, Germantown has: (1) "attempted to reason and negotiate with the PPA in order to have it understand the difficulty it [is] imposing on [partial-rights taxicab] companies" like Germantown (id. ¶ 18); (2) "repeatedly taken the position that dual regulation by [both] the PUC and [the] PPA is unreasonable because both entities have promulgated conflicting standards on the same subjects" (id. ¶ 22); (3) spoken out against the PPA's practices; (4) "associate[d] with other [partial-rights] cab companies on these issues" (id. ¶ 20); and (5) sought redress in

---

[1] The Amended Complaint alleges that these differences include: (1) "the fact that medallion cabs possess a property right that they can pledge as collateral and use to borrow money to fund compliance with costly regulatory standards," and (2) their respective operating territories. (Am. Compl. ¶¶ 14, 16); see also 53 Pa. Cons. Stat. Ann. § 5713(b).

Pennsylvania's state courts (id. ¶ 21).[2]

      B.    <u>Defendants' Conduct</u>

The Amended Complaint alleges that the PPA has "repeatedly retaliated" against Germantown "for its actions in speaking [out] against the PPA, assembling with other [partial-rights taxicab] companies to lawfully bring the PPA into court, and seeking redress in Pennsylvania's courts." (<u>Id.</u> ¶ 43.) It further alleges that the PPA has responded to Germantown's activities "with anger, threats, and intimidation." (<u>Id.</u> ¶ 19.) The Amended Complaint asserts that Defendants have retaliated against Germantown as follows:

    1.    On March 4, 2014, the PPA, through Defendants Schmid and Kirlin,[3] served Germantown with an out-of-service designation, pursuant to which Germantown was required to cease operations.[4] (<u>Id.</u> ¶ 23.) The PPA based the out-of-service designation "on a citation alleging that Germantown ha[d] failed to file its 2014 annual renewal application with the [PPA]." (<u>Id.</u> ¶ 27.) The Amended Complaint

---

[2] Specifically, the Amended Complaint alleges that Germantown was "successful in numerous proceedings against the PPA" and cites four particular cases in support of this allegation. (Am. Compl. ¶ 21.)

[3] Schmid is the Deputy Director and Enforcement Manager of Philadelphia's Taxicab and Limousine Division (the "TLD"). (<u>Id.</u> ¶ 5.) Kirlin "is the [TLD's] Clerk and the Manager of its Administration Department." (<u>Id.</u> ¶ 6.)

[4] An "out-of-service designation" is an "[i]mmediate and temporary prohibition from the exercise of rights granted by the [PPA] . . . due to a public safety concern." 52 Pa. Code § 1003.31. A "public safety concern" is:

    Behavior of an individual or condition of a vehicle or equipment which violate the act, this part or an order of the [PPA] and which have an immediate and direct adverse impact upon the orderly operation of taxicabs and limousines in Philadelphia or which present a direct threat to public safety. For example, a limousine with a broken windshield, a taxicab with inaccurate colors and markings or a taxicab driver subject to a police arrest warrant may each result in an out of service designation.

<u>Id.</u> Out-of-service designations must be "narrowly tailored to create the most limited reduction of rights necessary to protect the public interest." <u>Id.</u>

alleges that Germantown was the only partial-rights taxicab company that was placed out of service for failing to file the 2014 annual renewal application. Germantown filed its Fiscal Year ("FY") 2014 annual renewal form under protest on March 24, 2014.  (Id. ¶ 33.)

2.      On August 7, 2014, the PPA, through Kirlin, levied an assessment against Germantown in the amount of $250,000.00, which Germantown believes was exorbitant and later challenged.[5]  (Id. ¶ 34.)  This assessment was "the highest of any carrier in the Philadelphia metropolitan area by an approximate multiple of ten" and "was imposed irrespective of Germantown's limited territorial rights in Philadelphia."  (Id. ¶ 35.)  By contrast, when Germantown was regulated solely by the PUC, its assessment never exceeded $15,000.00.  (Id.)

3.      On August 8, 2014, the day after the PPA served Germantown with the $250,000.00 assessment, the PPA, through Schmid, served Germantown with a letter notifying it that the PPA had placed its CPC out of service for failing to fully comply with its annual filing requirements for FY 2015.  (Id. ¶ 38.)  The PPA took this action even though Germantown, through counsel, had previously sent Kirlin and the PPA a letter asking the PPA to accept its 2014 renewal form as fulfilling its obligation to file a 2015 renewal form.  (Id. ¶ 39.)

4.      On each occasion that the PPA has placed, or has attempted to place, Germantown's CPC out of service, it has made false statements to local news media regarding Germantown.   (Id. ¶ 30.)  As a result of those false statements,

_____

[5] This assessment was "the second exorbitant assessment that the PPA had attempted to levy on" Germantown.  (Am. Compl. ¶ 36.)  The Amended Complaint alleges that Germantown and other partial-rights taxicab operators previously successfully challenged a prior "exorbitant" assessment in the Commonwealth Court of Pennsylvania.  (Id.)

local media has reported that it is unsafe to ride in taxicabs operated by Germantown.  (Id.)  In addition, the rates for Germantown's statutorily-required insurance have increased "as a result of [the] negative and untrue press coverage."  (Id. ¶ 31.)

5.    "PPA enforcement officers have repeatedly engaged in random and unwarranted stops of [Germantown's] cabs."  (Id. ¶ 40.)  During these stops, PPA enforcement officers informed Germantown's drivers that the PPA would continue to harass Germantown until Germantown stopped challenging the PPA's regulatory authority.  (Id.)  Germantown's taxicabs have also been stopped by Philadelphia police officers who have stated that PPA officials informed the Philadelphia Police Department that Germantown taxicabs are not permitted in certain areas.  (Id. ¶ 41.)

Count I of the Amended Complaint asserts a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against each Defendant.  Count II of the Amended Complaint asserts a conspiracy claim pursuant to 42 U.S.C. § 1983 against each Defendant.  Defendants argue that we should dismiss both counts of the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations

of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

Defendants argue that the Amended Complaint fails to allege cognizable retaliation and conspiracy claims pursuant to 42 U.S.C. § 1983 for several reasons.  Specifically, they argue that the Amended Complaint does not allege:  (1) retaliatory action sufficient to deter a person of

ordinary firmness from exercising his constitutional rights or a causal link between Germantown's protected activity and the alleged retaliation, as are necessary for a First Amendment retaliation claim; (2) the identity of the PPA's final policymaker, as is necessary for a Monell claim against the PPA; and (3) the existence of a combination, agreement, or understanding among Defendants, as is necessary for a conspiracy claim.  We address each of these arguments in turn.

       A.     First Amendment Retaliation

Defendants argue that the Amended Complaint fails to allege a plausible claim that they retaliated against Germantown for engaging in constitutionally protected speech, in violation of the First Amendment, because it fails to allege the essential elements of such a claim.  In order to allege a cognizable First Amendment retaliation claim pursuant to § 1983, a complaint must allege:  (1) constitutionally protected conduct under the First Amendment, (2) "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) "a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)); see also Mann v. Brenner, 375 F. App'x 232, 236 (3d Cir. 2010).

Here, Defendants concede that the Amended Complaint adequately alleges constitutionally protected activity insofar as Germantown filed lawsuits against the PPA.  Those lawsuits were:  (1) Germantown Cab Co. v. Philadelphia Parking Authority, 993 A.2d 933 (Pa. Commw. Ct. 2010); (2) Sawink, Inc. v. Philadelphia Parking Authority, 34 A.3d 926 (Pa Commw. Ct. 2012; and (3) MCT Transportation, Inc. v. Philadelphia Parking Authority, 60 A.3d

899 (Pa. Commw. Ct.), aff'd, 81 A.3d 813 (Pa. 2013).[6]  (Am. Compl. ¶ 21.)  Defendants argue,

however, that the Amended Complaint fails to allege the requisite retaliatory action and

causation necessary to state a cognizable First Amendment retaliation claim.

        1.    <u>Retaliatory action</u>

The Amended Complaint alleges that Defendants' retaliatory conduct includes:  (1) the

March 4, 2014 out-of-service designation, (2) the $250,000.00 "exorbitant" annual assessment,

(3) the August 8, 2014 out-of-service designation, (4) negative and untrue statements to the

media on March 4, 2014 and August 8, 2014 about the safety of Germantown's taxicabs, and (5)

other unwarranted enforcement activities, including Germantown taxicabs being stopped by

Philadelphia Police officers and being issued "numerous unfounded citations" and additional

out-of-service designations.  (<u>Id.</u> ¶¶ 23, 28, 30, 34-35, 37-38, 40-41, 43.)  Defendants argue that

none of this conduct, as alleged, can be considered sufficient to deter a person of ordinary

firmness from exercising his constitutional rights and, thus, the alleged conduct cannot support a

First Amendment retaliation claim.  In addition to that general argument, Defendants argue more

specifically that their alleged conduct would not have deterred an individual of ordinary firmness

from filing lawsuits against the PPA because:  (1) Germantown was not deterred as evidenced by

its continuous litigation with the PPA since at least 2009; and (2) Defendants would have taken

_____

    [6] A fourth lawsuit alleged to be protected activity, <u>i.e.</u>, <u>Rosemont Taxicab Co. v. Philadelphia Parking Authority</u>, 68 A.3d 29 (Pa. Commw. Ct. 2013), does not actually qualify as such because Germantown was not a party to that action.  (<u>See</u> Am. Compl. ¶ 21(c).)

    The Amended Complaint also appears to allege that the filing of the instant lawsuit on August 9, 2014 constitutes protected activity for which Defendants retaliated against Germantown by imposing the $250,000.00 assessment.  (<u>See</u> <u>id.</u> ¶ 37.)  However, the instant lawsuit cannot have been the impetus for the allegedly retaliatory assessment because the lawsuit was filed two days after the PPA imposed the assessment.  Furthermore, the Amended Complaint does not allege any specific retaliatory activity by Defendants that occurred after August 9, 2014. We therefore do not consider the filing of the instant lawsuit to be protected conduct that could have given rise to any alleged retaliation.

the same regulatory actions against Germantown even if Germantown had not filed lawsuits against the PPA.[7]  (Defs.' Mem. at 22 (quoting Am. Compl. ¶¶ 30-32, 40-43).)

As an initial matter, we reject Defendants' assertion that we should consider whether Germantown was actually deterred in ascertaining whether the Amended Complaint plausibly alleges the second element of a First Amendment retaliation claim.  As noted above, the relevant inquiry is whether the Amended Complaint plausibly alleges that Defendants' actions were sufficient to deter a person of ordinary firmness from exercising his constitutional rights -- not whether it plausibly alleges that the actions did or did not actually deter Germantown.  See Thomas, 463 F.3d at 296 (citing Mitchell, 318 F.3d at 530); Citizens for a Better Lawnside, Inc. v. Bryant, Civ. A. No. 05-4286, 2007 WL 1557479, at *6 (D.N.J. May 24, 2007) ("[C]ourts use an objective standard, . . . [and] [t]he accurate inquiry is whether [the defendant's conduct] would deter a person of ordinary firmness from exercising his or her First Amendment rights, not whether [the defendant's conduct] actually deterred Plaintiffs from speaking."); see also Smith v. Plati, 258 F.3d 1167, 1177 (10th Cir. 2001) ("[I]t would be unjust to allow a defendant to escape

---

[7] Defendants also argue that the Amended Complaint's "vague, generalized allegations of retaliatory conduct in the nature of unspecified 'false statements' to the media, 'random and unwarranted stops' of Germantown's taxicabs[,] and 'unfounded citations and additional out of service designations'" are insufficient to raise Germantown's right to relief above the speculative level.  However, "there is a 'dearth of precedent of sufficient specificity . . . regarding [an individual's] First Amendment right to be free from retaliatory harassment."  See Thomas, 436 F.3d at 296 & n.4 (quoting McKee v. Hart, 436 F.3d 165, 173 (3d Cir. 2006)).  Furthermore, although the Amended Complaint does not allege specific dates on which the "random and unwarranted stops" and "numerous unfounded citations" and additional out-of-service designations occurred (Am. Compl. ¶¶ 40-43), we conclude that Defendants have "'fair notice of what [this aspect of] the . . . claim is and the grounds upon which it rests,'" particularly with respect to the citations and out-of-service designations because the PPA undoubtedly has records of the penalties it imposes on the taxicab companies it regulates.  See Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47).  Likewise, we conclude that Defendants have fair notice of the claims regarding false statements to the media because the Amended Complaint alleges that each time that the PPA has put Germantown out of service, i.e., March 4, 2014 and August 8, 2014, the PPA has contacted the local media, which, in turn, reported that Germantown's taxicabs are unsafe.  (See Am. Compl. ¶¶ 23, 30, 34, 38.)

liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." (quotation omitted)).  Consequently, whether Germantown was actually deterred from engaging in protected activity as a result of Defendants' actions is irrelevant to our inquiry, and we consider only whether the Amended Complaint plausibly alleges conduct that would deter a person of ordinary firmness from exercising his First Amendment rights.

Conducting this review and construing the allegations in the Amended Complaint in the light most favorable to Germantown, we conclude that the Amended Complaint plausibly alleges conduct that would deter a person of ordinary firmness from exercising his constitutional rights, because all of this alleged conduct would presumably have had significant effects on Germantown's ability to operate its business.   See L.L. Nelson Enters. v. Cnty. of St. Louis, 673 F.3d 799, 809 (8th Cir. 2012) (holding that allegations that defendant municipality shifted a substantial portion of plaintiff's business to other companies, inhibited the growth of the plaintiff's business, and caused substantial economic injury were sufficient to plausibly allege retaliatory conduct that would deter the exercise of First Amendment rights).  Specifically, we find plausible allegations of such conduct in the Amended Complaint's allegations regarding the March 4, 2014 and August 8, 2014 out-of-service designations, the $250,000.00 "exorbitant" annual assessment, "random and unwarranted stops" of Germantown's taxicabs, "numerous unfounded citations" and additional out-of-service designations, and the negative and untrue statements to the media on March 4, 2014 and August 8, 2014 about the safety of taxicabs operated by Germantown constitute plausible allegations of conduct that would deter a person of ordinary firmness from exercising his constitutional rights given the significant effects that such actions would presumably have on Germantown's ability to operate its business.

Finally, we reject Defendants' request that we consider, at this stage, whether they would have taken the same actions against Germantown even absent Germantown's protected activity. Although "[a] defendant may defeat [a] claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity," Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002)), in deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it."  Flora v. Cnty. of Luzerne, 776 F.3d 169, 175 (3d Cir. 2015) (citing Animal Sci. Prods., Inc. v. China Minmetals Corp., 654 F.3d 462, 469 n.9 (3d Cir. 2011)).  Here, Germantown disputes whether Defendants were authorized by regulation, statute, or other means to take the actions they took against Germantown.  Accordingly, consideration of whether Defendants would have taken the same actions against Germantown even if Germantown had not engaged in protected activity would require us to engage in a factual inquiry that is improper at this stage of the proceedings.  See Crosby v. Piazza, 465 F. App'x 168, 173 (3d Cir. 2012) (finding error in district court's Fed. R. Civ. P. 12(b)(6) consideration of whether defendants to § 1983 retaliation claim would have taken the same actions irrespective of any desire to retaliate against plaintiff); Friedman v. Phila. Parking Auth., Civ. A. No. 14-6071, 2015 WL 2337288, at *5 n.5 (E.D. Pa. May 14, 2015) (refusing to dismiss First Amendment retaliation claim where it was disputed whether defendant "'would have taken the same action even if the plaintiff had not engaged in the protected activity'" (quoting Lauren W., 480 F.3d at 267)).

In light of the foregoing, we conclude that the Amended Complaint plausibly alleges that Defendants engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights and therefore plausibly alleges the second element of a First

Amendment retaliation claim pursuant to § 1983.

    2.    Causation

Defendants also argue that we should dismiss Germantown's First Amendment retaliation claims pursuant to § 1983 because the Amended Complaint fails to plausibly allege a causal link between Germantown's protected activity and Defendants' alleged retaliation.  The Third Circuit has explained that, in order to plausibly allege the requisite causal link, a complaint must allege either:  "'(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"  Vaticano v. Twp. of Edison, 514 F. App'x 218, 225 (3d Cir. 2013) (quoting Lauren W., 480 F.3d at 267).  However, even "[i]n the absence of these elements, . . . evidence of causation may be 'gleaned from the record as a whole.'"  Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)); see also Arneault v. O'Toole, 513 F. App'x 195, 198 (3d Cir. 2013) (applying this standard in context of Rule 12(b)(6) motion to dismiss First Amendment retaliation claim); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178-79 (3d Cir. 1997) (concluding that district court erred in dismissing retaliation claim for failure to plausibly allege causation without analyzing whether allegations as a whole plausibly alleged causation).  Such an analysis may include looking "to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the [plaintiff,] . . . or other types of circumstantial evidence."  See Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (citations omitted); see also Farrell, 206 F.3d at 283-84 (stating that a plaintiff may rely on a "broad array" of evidence to show the requisite cause and effect to prove retaliation).

Germantown argues only that the Amended Complaint plausibly alleges causation when the allegations are considered as a whole.  We therefore only address whether the Amended

Complaint plausibly alleges causation pursuant to this manner of establishing causation, which is the most all-encompassing manner in which causation may be plausibly alleged.  See Kachmar, 109 F.3d at 178 (stating that, "[i]n concentrating exclusively on the gap between [plaintiff's] protected activity and [the alleged retaliation], and the sufficiency of [plaintiff's] allegations of a pattern of antagonism, the district court failed to make the more generalized inquiry into whether [plaintiff's] protected activity was the likely reason for" the alleged retaliation).

As we have explained, the Amended Complaint plausibly alleges constitutionally protected activity insofar as it alleges that Germantown filed three separate lawsuits against the PPA, i.e., Germantown Cab Co., Sawink, and MCT Transportation.  See supra at 8-9; (Am. Compl. ¶ 21).   Moreover, we conclude that Germantown engaged in protected activity throughout the entire duration of these lawsuits, the last of which concluded on November 20, 2013, when the Pennsylvania Supreme Court affirmed the Commonwealth Court's rulings in MCT Transportation.  See MCT Transp., 81 A.3d 813; see also Noel v. Boeing Co., Civ. A. No. 09-3613, 2011 WL 4389547, at *9 (E.D. Pa. Sept. 21, 2011) (concluding that prior lawsuit, "which went to trial in July 2007 and was decided in May 2008, [constituted] protected activity"); Carmody v. Pa. State Univ., Civ. A. No. 05-1645, 2007 WL 1074862, at *5 (M.D. Pa. Apr. 9, 2007) (stating that "plaintiff was performing a protected activity throughout the entire duration of her initial lawsuit, which occurred up until the settlement" (citation omitted)).

Germantown's last alleged protected activity was therefore on November 20, 2013, approximately three-and-a-half months before Defendants' first alleged retaliatory conduct on March 4, 2014, and approximately eight-and-a-half months before Defendants' last alleged retaliatory conduct on August 8, 2014.[8]  (See id. ¶¶ 21, 23, 30, 34-35, 37-38.)  However, the

---

[8] Specifically, the alleged retaliation is:  (1) the March 4, 2014 out-of-service designation,

significant time that elapsed between the protected activity and the alleged retaliation does not necessarily bar a conclusion that the Amended Complaint plausibly alleges causation because "temporal proximity merely provides an evidentiary basis from which an inference [of causation] can be drawn."  See Kachmar, 109 F.3d at 178.  As we have explained, a complaint may also plausibly allege causation based on the record as whole when there are other allegations linking the alleged retaliatory conduct to the plaintiff's protected activity.  See id.; see also Washington-El v. DiGuglielmo, 419 F. App'x 275, 280 (3d Cir. 2011) (concluding that record as a whole permitted inference of causation with respect to retaliation claim even though retaliatory actions occurred two, three, and four months after protected activity).

Here, considering the Amended Complaint's allegations as a whole, we conclude that the Amended Complaint sufficiently alleges a causal link between Germantown's protected activity and the alleged retaliation as it alleges that Germantown engaged in long-term litigation against the PPA and that, within months thereafter, Defendants began taking harmful actions against Germantown.  Indeed, although the Amended Complaint could be clearer regarding the requisite causal link, we find that, construing the allegations in the Amended Complaint in the light most favorable to Germantown, the Amended Complaint gives rise to a plausible inference that

---

which occurred approximately three-and-a-half months after the Pennsylvania Supreme Court's November 20, 2013 affirmance of the Commonwealth Court's rulings in MCT Transportation; (2) the $250,000.00 "exorbitant" annual assessment that was served on Germantown on August 7, 2014, which was approximately eight-and-a-half months after the rulings were affirmed; (3) the August 8, 2014 out-of-service designation, which occurred approximately eight-and-a-half months after the rulings were affirmed; (4) negative and untrue statements to the media made "[e]ach time that the PPA has put [Germantown] out of service," therefore at least on March 4, 2014 and August 8, 2014, which is approximately three-and-a-half and eight-and-a-half months after the rulings were affirmed; and (5) other unwarranted enforcement activities and attempts to put Germantown out of service, including the random and unwarranted stops of Germantown taxicabs and the issuance of "numerous unfounded citations" and additional out-of-service designations, for which no specific timing is alleged.  (Id. ¶¶ 23, 28, 30, 34-35, 37-38, 40-41, 43.)

Defendants treated Germantown unfavorably because Germantown exercised its First Amendment rights in filing litigation against the PPA. We therefore conclude that the Amended Complaint plausibly alleges the third element of a First Amendment retaliation claim pursuant to § 1983.

      B.    <u>Monell</u>

Defendants alternatively argue that we should dismiss the Amended Complaint's First Amendment retaliation claim against the PPA because the Amended Complaint fails to plausibly allege the essential elements of a <u>Monell</u> claim. Specifically, Defendants argue that the Amended Complaint fails to plausibly allege the identity of the PPA's final policymaker, which is essential to a claim pursuant to <u>Monell</u>.

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To obtain relief under § 1983, "a plaintiff must demonstrate [that] the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted). It is well-settled that a municipal entity may only be liable under § 1983 when it implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91, 694 (1978).

Moreover, a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] a custom" in the absence of a "conscious decision or

deliberate indifference of some natural person." Simmons v. City of Philadelphia, 947 F.2d 1042, 1063 (3d Cir. 1991). It is therefore the plaintiff's burden "'to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.'" B.S. v. Somerset Cnty., 704 F.3d 250, 274-75 (3d Cir. 2013) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). A policymaker is an official with "final, unreviewable discretion to make a decision or take an action." Andrews, 895 F.2d at 1481 (discussing City of St. Louis v. Praprotnik, 485 U.S. 112, 142 (1988)); see also Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006) (citing cases). Accordingly, to state a Monell claim upon which relief can be granted, a complaint must allege the identity of the municipal entity's final policymaker. See Santiago v. Warminster Twp., 629 F.3d 121, 135 & n.11 (3d Cir. 2010) (requiring the plaintiff to "plead in some fashion" the identity of an individual with "final policy making authority, as that is a key element of a Monell claim." (internal citation omitted)); see also Simmons, 947 F.2d at 1062 (stating that a Monell plaintiff must "identify officials with ultimate policymaking authority in the area in question" (discussing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989))).

The Amended Complaint alleges that Schmid is the Philadelphia Taxicab and Limousine Division's (the "TLD's") Deputy Director and Enforcement Manager and that Kirlin is the TLD's Clerk and Manager of its Administration Department. (Am. Compl. ¶¶ 5-6.) It does not, however, allege that either of these individuals -- or any other individual -- is the PPA's final policymaker. We therefore conclude that the Amended Complaint fails to plausibly allege the identity of the PPA's final policymaker, and therefore fails to assert a cognizable First Amendment retaliation claim against the PPA pursuant to Monell. See Santiago, 629 F.3d at 135 n.11; see also Simmons, 947 F.2d at 1062.

Because the Amended Complaint fails to plausibly allege a First Amendment retaliation

claim pursuant to <u>Monell</u> against the PPA, we grant Defendants' Motion to Dismiss Count I of the Amended Complaint against the PPA.   Moreover, although Defendants do not explicitly argue that the Amended Complaint's First Amendment retaliation claims against the individual Defendants in their official capacities should be dismissed on this basis as well, we dismiss those claims because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>see also</u> <u>Carr v. Dewey Beach</u>, 730 F. Supp. 591, 609 (D. Del. 1990) (dismissing official capacity claim against individual defendant when complaint failed to allege cognizable <u>Monell</u> claim against municipality because the official capacity claim was functionally a claim against the municipality).   We therefore dismiss the Amended Complaint's First Amendment retaliation claims against each Defendant.

     C.    <u>Conspiracy</u>

Count II of the Amended Complaint, which asserts a conspiracy claim pursuant to § 1983, alleges that Defendants conspired to violate Germantown's constitutional rights under the First Amendment.  (Am. Compl. ¶ 50.)  Defendants argue that the Amended Complaint fails to state a cognizable conspiracy claim because it makes "no particularized allegations of any alleged conspiracy."[9]  (Defs.' Mot. ¶ 12c.)

In order to state a conspiracy claim upon which relief can be granted pursuant to § 1983, a complaint must allege:  (1) "the existence of a conspiracy involving state action," and (2) a deprivation of civil rights "in furtherance of the conspiracy by a party to the conspiracy." <u>Marchese v. Umstead</u>, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).  To allege the existence of a

---

[9] Defendants also argue that the conspiracy claim is not cognizable because it necessarily relies upon the Amended Complaint's defective retaliation claims.  Given our conclusion that the First Amendment retaliation claims are not inadequate, except insofar as they fail under <u>Monell</u>, we reject Defendants' argument.

conspiracy, a complaint must make "'specific factual allegations of combination, agreement, or understanding among all or between any defendants to plot, plan, or conspire to carry out the alleged chain of events.'" Id. (quoting Hammond v. Creative Fin. Planning Org., 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)); see also Wood v. Williams, 568 F. App'x 100, 107 (3d Cir. 2014). "'Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient.'" Marchese, 100 F. Supp. 2d at 371 (quoting Outterbridge v. Pa. Dep't of Corr., Civ. A. No. 00-1541, 2000 WL 795874, at *8 (E.D. Pa. June 7, 2000)). In addition, "a plaintiff must allege 'facts that plausibly suggest a meeting of the minds.'" Chruby v. Kowaleski, 534 F. App'x 156, 160 (3d Cir. 2013) (quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010)). Indeed, "[t]he complaint must not plead merely a 'conclusory allegation of agreement at some unidentified point.'" Id. (quoting Twombly, 550 U.S. at 557).

Here, the Amended Complaint contains allegations regarding the identities of the Defendants in this case, retaliatory actions taken by Defendants against Germantown, and the timing of some of Germantown's protected activity, but it contains no "'specific factual allegations of combination, agreement, or understanding among all or between any defendants to plot, plan, or conspire to carry out the alleged chain of events.'" See Marchese, 110 F. Supp. 2d at 371 (quoting Hammond, 800 F. Supp. at 1248). Indeed, it fails to allege any "'facts that plausibly suggest a meeting of the minds'" and instead merely alleges that Kirlin and Schmid performed work on behalf of the PPA and made unspecified "statements among themselves and others in order to conceal their unlawful and unconstitutional conduct." See Chruby, 534 F. App'x at 160 (quoting Great W. Mining, 615 F.3d at 179); (Am. Compl. ¶¶ 23, 34, 38, 50). We

therefore conclude that the Amended Complaint fails to plausibly allege the existence of a conspiracy pursuant to § 1983.  See Miles v. Twp. of Barnegat, 343 F. App'x 841, 845 (3d. Cir. 2009) (finding a complaint's "single-sentence conclusory allegations of a conspiracy" to be insufficient to allege a plausible § 1983 conspiracy (citations omitted)).

Because the Amended Complaint fails to plausibly allege a "combination, agreement, or understanding" among Defendants as is necessary to state a cognizable conspiracy claim, we grant Defendants' Motion to Dismiss Count II of the Amended Complaint as to all three Defendants.

D.    Leave to Amend

In civil rights cases, "district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).  We are not convinced that Germantown's First Amendment retaliation and conspiracy claims against the PPA, Schmid, and Kirlin are futile and therefore grant Germantown leave to file a Second Amended Complaint asserting only First Amendment retaliation and conspiracy claims pursuant to § 1983 against each Defendant.

**IV.    CONCLUSION**

For the foregoing reasons, we grant Defendants' Motion to Dismiss.   An appropriate

Order follows.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.